(No. 33221.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* KATHERINE K. WILCOX, Plaintiff in Error.

*Opinion filed March 24, 1955.*

HUGH M. MATCHETT, R. E. BLACKWOOD, and KARL A. KOCH, all of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (GORDON B. NASH, VINCENT P. FLOOD, and WILLIAM SYLVESTER WHITE, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiff in error, Katherine K. Wilcox, prosecutes this writ of error to review a judgment of the circuit court of Cook County fining her $25 for an alleged direct contempt of court. Although the People raise the question of our jurisdiction on direct appeal, we think it manifest, from an examination of the record presented, that the order appealed from constitutes an invasion of plaintiff in error's constitutional rights of due process and equal protection of the law.

The contempt proceeding arose during the course of a hearing in a chancery suit initiated by one Adaline C. Smallwood, who, apparently, was the beneficiary of a trust created by the will of her daughter, Helen I. Soutter, deceased. The facts show that the mother, as part of a plan for marshaling assets outstanding in the names of others,

herself established a trust known as the Adaline C. Small-wood trust which provided that after the death of the settlor her rights were to vest in William E. Lukes, should he survive her. Following the establishment of such trust, Adaline C. Smallwood commenced two chancery suits seeking to benefit her trust estate. The first of the suits, No. 53 C 2011, was for the appointment of a trustee under a trust created by the will of Helen I. Soutter, for a construction of said will, and for certain relief against the executor. The second suit, No. 53 C 4985, sought an accounting from the executor for the proceeds of a certain sale. Several months after the said complaints had been filed, William E. Lukes, by attorney Earl Wilcox, husband of the plaintiff in error, filed a petition to intervene in cause No. 53 C 2011 on the ground that he was a contingent beneficiary of the Smallwood trust and, as such, had an interest to protect in the two suits which sought to marshal and safeguard the assets of said trust. The court permitted the petition to be filed but neither granted nor denied the motion to intervene.

Following various reports and hearings in the two causes, the court, on December 15, 1953, entered an order in suit No. 53 C 2011 appointing a single trustee for both the Smallwood and Soutter trusts and directing that the assets of both trusts be turned over to said trustee. On the same day, an order was entered dismissing cause No. 53 C 4985. A short time thereafter, the new trustee filed a petition in cause No. 53 C 2011 seeking directions as to the administration of the Smallwood trust and praying that summons be issued directed to William E. Lukes, among others, directing him to appear and answer the said petition and to assert any rights he might have or claim with respect to the trust instrument and any objection that he might "have or claim to have against any order that this Court may enter concerning the trust and the assets thereof." A summons was served on Lukes, and six days

later, on January 4, 1954, his appearance, and that of his attorney, Earl Wilcox, was filed in the cause. Wilcox then prepared motions pertaining to each of the chancery causes and served notices for a hearing on the same on January 12, 1954. When that day arrived, Wilcox was ill and instructed the plaintiff in error, his wife and secretary, to present the motions to the court and to request that the hearing be continued because of his illness. There is disagreement as to what occurred when plaintiff in error sought to fulfill her husband's instructions.

The contempt order entered against plaintiff in error recites that she appeared before the bar and presented two motions and two notices of said motions and asked leave to file them with the minute clerk of the court, whereupon the court denied her leave to do so and instructed her that she could not file the said documents and that the court would not entertain the motions. However, in plaintiff in error's motion to vacate the contempt order, she alleged that the court merely handed the documents back to her saying it would not entertain the motions and, for that reason, specifically refused to enter an order denying them. She also denied that the court had instructed her that she could not file the motions. The order of court in question was not reduced to writing in the minutes of the cause. In any event, it is admitted that plaintiff in error then filed the documents in the office of the clerk of court on another floor of the building.

A week after the events last recited, plaintiff in error, through happenstance, accompanied her husband at another hearing on the chancery matters. The record discloses that the court, apparently upon learning of the plaintiff in error's presence, abruptly interrupted the proceedings and summarily proceeded against her in the following manner:

"The Court: Are you Mrs. Wilcox?

Mrs. Wilcox: Yes, sir.

The Court: Will you come up here a minute? You

were in here the other day, I believe, on a motion. I told you you could not file that.

Mrs. Wilcox: Your Honor, you said you could not entertain it. You didn't say I couldn't file it.

The Court: I handed it back to you.

Mrs. Wilcox: Yes, sir.

The Court: What did you do then? Go downstairs and file it anyhow?

Mrs. Wilcox: Yes, sir.

The Court: Are you a lawyer?

Mrs. Wilcox: No, sir.

The Court: That fact that you are not a lawyer, lady, will help you out. You are fined $25.00 for contempt of court. Take her into custody. Draw an order on it, will you, Mr. Scranton? You can release her if the money is paid Mrs. O'Keefe; otherwise pay $25.00 to the clerk of the court on the fifth floor, and get a receipt. Take her down there and let her pay it. You may suggest to the clerk that he take her individual check. You got to draw an order. They won't take the money down there. Tell that woman to just hold her down in the Sheriff's office until we get an order. She can't pay the fine until we do."

The order which followed from the foregoing action of the court, and from which this writ is prosecuted, is as follows:

"ORDER

"It appearing to the Court that on January 12, 1954, one Katherine K. Wilcox appeared before the bar of this Court and presented two motions and two notices of said motions purporting to be signed by Earl Wilcox, attorney for William Ernest Lukes, and asked leave to file said documents with the minute clerk of this Court. Whereupon the Court denied leave so to do and instructed the said Katherine K. Wilcox that she could not file said documents and that the Court would not entertain the said motions.

"And it further appearing that said Katherine K. Wilcox was not and is not a licensed attorney for the State of Illinois.

"And it further appearing from the records of this Court that said Earl Wilcox, as attorney for William Ernest Lukes, heretofore presented a written motion for leave to intervene in said cases on behalf of William Ernest Lukes, which motion the Court entertained and which has not been allowed, and the said Katherine K. Wilcox now being present in open court.

"And it further appearing that on January 12, 1954, she did, despite the ruling of this Court, file said two motions and notices of said motions in the office of the Clerk of the Circuit Court of Cook County, on a floor of the County building, other than the floor on which this Court was then and there sitting, all without the knowledge or leave of said Court, the Court finds that said acts of Katherine K. Wilcox tend to interfere with the administration of justice and that she is guilty of contempt of court in the premises.

"It is Therefore Ordered, Adjudged and Decreed that Katherine K. Wilcox be, and she is hereby, held in contempt of court in the premises, and It Is Further Ordered that as punishment therefor she is hereby fined the sum of Twenty-Five Dollars ($25.00), and It Is Further Ordered that mittimus issue directing that the Sheriff of Cook County take the body of said Katherine K. Wilcox and keep it until said fine is paid.

"It Is Further Ordered that said motions and notices of motions filed as aforesaid on January 12, 1954, be and they are hereby stricken from files of this Court, and that physically they be impounded by the Clerk and held subject to the further order of this Court."

As we interpret the contempt order, it is predicated in part on the conclusion that Lukes, the client of plaintiff in error's husband, was still in the status of a stranger to the

action who was seeking leave to intervene. The record shows, however, that Lukes had been served with a summons and made a party to cause No. 53 C 2011, that Wilcox had entered his appearance as Lukes's attorney, and that the summons directed Lukes to appear and answer a petition of the trustee and to assert any right or claim he might have with respect to the Smallwood trust which the court itself had incorporated into cause No. 53 C 2011. For all that is shown in the contempt order, and in view of the summons served upon Lukes, the motions sought to be filed could have been in response to the trustee's petition and presented to prevent a default against Wilcox's client. The motions and notices do not, however, appear in the record before us and plaintiff in error's attempt to include them was refused due to the court's impounding order. Without going into the question of whether a court may properly refuse to allow a party to file a motion, not contumacious in itself, in a cause, we conclude that to the extent shown, the contempt order was predicated upon an erroneous conclusion.

Reading further into the record before us, we are met with the question of whether the plaintiff in error was given a clear and express direction that she could not file the motions. In seeking the answer it must be borne in mind that the contempt with which plaintiff in error is charged did not consist of unseemly conduct in the presence of the court but of allegedly contemptuous disobedience of an order of the court. As we view it, the existence of an order of the court and proof of wilful disobedience are essential to a contempt of the latter type. Punishment for contempt has been described as a drastic remedy and to the end that individual liberty be protected from possible abuse of the inherent power of the courts to so proceed, it is required that the mandate of the court must be clear before disobedience can subject a person to punishment. (*Spector v. Allen*, 281 N.Y. 251, 22 N.E. 2d 360.) Note-

worthy in our own jurisdiction is the case of *Gardner* v. *People,* 100 Ill. App. 254. The rationale of that decision is that where the contumacious conduct is founded upon the subsequent disobedience of an order of court occurring outside the presence of the court or the physical environs of the courtroom, as distinguished from future acts of disobedience which occur in the immediate presence of the court after due admonition, such order must be found in the court's records. In the *Gardner case* a minute clerk, through inadvertence, failed to enter an order later disobeyed by an attorney in the cause. When contempt proceedings were started and the absence of an order in the record discovered, a written order based upon the court's recollection of the oral order was then entered in the record. It was held that such an order was insufficient to support the contempt proceedings. In reaching its result, the Appellate Court relied in part upon *Bank of Hamilton* v. *Dudley,* 27 U.S. 523, 7 L. ed. 496, where this observation is made: "That a court of record, whose proceedings can be proved by the record alone, should, at a subsequent term, determine that an order was made at a previous term, of which no trace could be found on its records, * * * is a proceeding of so much delicacy and danger, which is liable to so much abuse, that some of us question the existence of the power."

In principle it is difficult to distinguish the situation presented in the *Gardner case* from the one at hand. Admittedly no order was entered of record by the court on January 12, 1954, the day plaintiff in error appeared in court with the motions. Whether this was due to inadvertence is not shown, but we must, nevertheless, consider the possibility recognized in the *Gardner case,* that it is fairly inferable that the minute clerk heard no such order given. In any event, there is no showing in the record that an order was clearly given or understandingly received on January 12. Nor do the subsequent proceedings of

January 19, 1954, operate to cure the record; it would seem, rather, that they further confirm the doubts that a clear order was given to plaintiff in error. When she appeared in court on the latter date, the court's only reply to her denial that she had been ordered not to file the motions was the statement: "I handed it [them] back to you." We do not construe the action of handing the motions back as conveying an order that plaintiff in error could not file them, nor could she be held to such an understanding. Regardless of what interpretation is to be placed upon the court's action, we think it manifest from the record that the contempt order entered on January 19, 1954, was based upon the court's recollections and conclusions of what had occurred the previous week. Admittedly it was not based upon any order of which the court had a memorial. In view of the drastic and precipitate nature of punishment for criminal contempt, it is our opinion that the course of procedure reflected by the record falls short of the due process and fundamental fairness to which plaintiff in error was entitled.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*