JAMES E. O'GRADY, Plaintiff-Appellee, v. COOK COUNTY SHERIFF'S MERIT BOARD *et al.*, Defendants (Robert A. Novelle *et al.*, Respondents-Appellants).

First District (6th Division)   No. 1—89—0608

Opinion filed September 28, 1990.

Patrick T. Driscoll, Jr., of William J. Harte, Ltd., of Chicago, for appellants.

Sidley & Austin, of Chicago (John G. Levi, Brian J. Gold, and Scott E. Gross, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

In this appeal, we are asked to decide whether a court order directed to defendants Robert A. Novelle and Arthur A. Waddy was sufficiently clear and specific enough to warrant a finding of contempt for failure to obey. On May 27, 1988, the circuit court of Cook County entered an order directing the Cook County Sheriff's Merit Board (Board) to decide the issues in a complaint brought by Sheriff James E. O'Grady (O'Grady). At the time of that order, defendants Novelle and Waddy were two (of three) members of the Board. On March 3, 1989, the court issued an order finding both defendants in contempt for refusing to obey the order. Defendants appeal this final judgment under Supreme Court Rule 301 (107 Ill. 2d R. 301).

In 1984, the General Assembly amended the Cook County Sheriff's Merit Board Act (Ill. Rev. Stat. 1985, ch. 125, par. 51 et seq.) to provide merit protection to deputy sheriffs. This act required the Board to establish a classification of ranks for deputies and the stand-

ards for each rank. In 1985, during the administration of Sheriff Richard Elrod, the Board promulgated a classification and certified 171 employees to various ranks.

On August 25, 1987, Sheriff O'Grady sought leave to file a complaint with the Board charging the Board and Elrod with various improprieties in relation to the process of establishing ranks and making personnel appointments. On the same date, the Board entered an order denying O'Grady leave to file his complaint. The order stated:

"FURTHERMORE, the majority opinion was that the Board does not have the statutory authority to review its own action or give the declaratory relief requested in the petition, since the basis of the complaint is against the actions of the Board. The majority opinion is that objectivity of the Board would be highly questionable, due to the allegations in the petition."

O'Grady filed a complaint for administrative review of that decision. Judge Harold A. Siegan heard the matter on May 20 and orally pronounced:

"[T]his case is being returned to the Administrative Review Board, the Merit Board, for a determination as to the issues before it. *** Let them make the decision. Then I will look at it after they make a decision. *** I want them to conduct a hearing. *** The issue is *whether or not they will take jurisdiction* and whether they decide on the issues." (Emphasis added.)

When the parties reappeared in court and sought clarification on May 27, Judge Siegan stated:

"The Merit Board should hear the complaint, and if they can't hear the complaint, because they don't have objectivity, then they should resign and have somebody else hear the matter. *** I want them to hear it. *If you say they have no right to hear it, argue it before them and let them make the decision. *** Let them hear whatever they want to hear and let them make their decision,* and it will come before me ***." (Emphasis added.)

Although these statements seem to imply that jurisdiction remained an open issue, the written order did not direct the Board to either consider jurisdiction or not consider it:

"4. The case is hereby returned to the Sheriff's Merit Board to review the allegations in Plaintiff O'Grady's Complaint, Docket No. 522, and to conduct a proper hearing to decide the issues presented in that complaint. Those members of the Merit Board who decide that they do not have the requisite objectivity and are unable to fulfill their duty *** should resign their

positions forthwith \*\*\*."

On remand, O'Grady filed motions before the Board to vacate its order of August 25, 1987, to file the complaint, to set a new hearing date, and to recuse the nonobjective Board members. The Board heard these matters in July 1988. None of the members recused themselves. On July 28, Chairman Novelle stated:

"The \*\*\* sole basis of the disagreement that emanated at the conference to decide this order [by the Board on August 25, 1987,] was whether or not this board had statutory authority in the legal sense of jurisdiction \*\*\*.

The sentence [about the possible lack of objectivity of Board members] \*\*\* was really oratory or advisory language in the opinion that \*\*\* for us, the board to be asked to review our own conduct, \*\*\* would put the board in a highly suspect position \*\*\* in asking the board to be the Appellate Court for their own decision or their own actions \*\*\*."

The Board then set up a briefing schedule for the jurisdiction issue. On August 31, 1988, the majority of the Board (Waddy and Novelle) entered an order refusing to review and investigate the allegations contained in the complaint on the grounds that the Board lacked jurisdiction or statutory powers to investigate itself.

The next day, Judge Siegan ordered the Board to show cause why it should not be held in contempt for refusal to comply with the court order of May 27. Subsequently, Judge Siegan recused himself and the case was assigned to Judge Thomas J. O'Brien who, on March 3, 1989, entered an order holding Novelle and Waddy in contempt for refusing to obey the court's May 27, 1988, order.

The court entered judgment on the finding in the amount of $10 as to each defendant and stayed enforcement pending appeal by the respondents.

■■ ■ " 'Punishment for contempt has been described as a drastic remedy and to the end that individual liberty be protected from possible abuse of that inherent power of the courts to so proceed, it is required that the mandate of the court must be clear before disobedience can subject a person to punishment.' " (*O'Leary v. Allphin* (1976), 64 Ill. 2d 500, 514, 356 N.E.2d 551, quoting *People v. Wilcox* (1955), 5 Ill. 2d 222, 228, 125 N.E.2d 453.) In *O'Leary* (64 Ill. 2d at 514), the supreme court examined a trial court injunction order and found it "was not so specific and clear as to be susceptible of only one interpretation." Consequently, the findings of contempt for disobeying the order were reversed. In *People v. Romanski* (1987), 155 Ill. App. 3d 47, 51, 507 N.E.2d 887, the court reversed a contempt finding be-

cause the order which the defendant had disobeyed "lacked the requisite specificity and clarity and was not clearly understood by all parties."

Defendants Novelle and Waddy contend that the court order of May 27 is both unclear as to whether they should have assumed jurisdiction and inconsistent with the court's oral pronouncements. While we agree that the written order may be inconsistent with the oral pronouncements of the court, this argument misses the issue. Under Supreme Court Rule 272 "[i]f at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, *** the judgment becomes final only when the signed judgment is filed." (107 Ill. 2d R. 272.) In this situation, whatever oral pronouncements the court may have made are not effective unless they appear in the final written decree (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 815, 439 N.E.2d 1005) and the oral order does not become binding until the written decree is entered (*McWhite v. Equitable Life Assurance Society* (1986), 141 Ill. App. 3d 855, 861, 490 N.E.2d 1310).

The issue, therefore, is whether the written order of May 27 was so specific and clear that it could warrant a finding of contempt for failure to obey.

Judge O'Brien found the order clear but did so because he assumed that the order to conduct a "proper hearing" did, in effect, settle the question of jurisdiction. He reasoned that: "where an order does not contain an express finding of statutory authority in the Board, such finding will be implied where the claim of nonstatutory authority is rejected by the remanding of the case back to the Board." Thus, he reasoned that the remand implied jurisdiction to hear the case.

While we agree that the trial court's interpretation of the order is a reasonable one, that fact does not dispose of the issue before us. In order to support a finding of contempt, the order must be "so specific and clear as to be susceptible of only one interpretation." (*O'Leary*, 64 Ill. 2d at 514.) It must not only be capable of reasonable interpretation, but that interpretation must be to the exclusion of other reasonable interpretations; it must be unambiguous. This is not true here.

The written order remanded the case to the Board for a "proper hearing to decide the issues presented in [the] complaint." While jurisdiction is not an issue presented in the complaint, it is, nevertheless, a usual and proper place to begin absent a prior finding. As jurisdiction was a disputed issue below, it was therefore not only a

reasonable consideration but necessary before any examination of the allegations of the complaint could begin. Yet the written order does not mention jurisdiction even though this was an unsettled issue pursuant to the court's oral pronouncements. Instead, the order instructs Board members to decide if they have the "requisite objectivity" for fulfilling their duties and to resign if they do not. Thus, the order could lead Board members to conclude that they should settle jurisdiction first and proceed to a fuller hearing only after finding they had jurisdiction to do so.

The defendants' interpretation of the order was a reasonable alternative to the interpretation which led to the contempt order. Thus, we find that the written court order was capable of more than one interpretation on the subject of jurisdiction and, therefore, we reverse the finding of contempt against defendants Novelle and Waddy.

For the reasons stated, the judgment of the trial court is reversed.

Judgment reversed.

LaPORTA, P.J., and McNAMARA, J., concur.