THIRD DIVISION

November 12, 1998

No. 1-97-0834

In
 
re
 MARRIAGE OF BARBARA A. STEINBERG,

Petitioner-Appellee and Cross-

Appellant,

and

FORREST L. INGRAM,

Respondent-Appellant and Cross-Appellee.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 89 D 10542

Honorable

Moshe Jacobius,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

We address an appeal and cross-appeal that raise several issues in the interpretation and continuing enforcement of child support agreements.  We affirm the trial court in all rulings but one: a finding that interest on child support payments is mandatory.  We disagree and reverse that part of the trial court order, remanding for consideration consistent with this opinion.

Barbara Steinberg (petitioner) and Forrest Ingram (respondent) were divorced on July 10, 1989.  An agreement about child support was included in the judgment of dissolution.  In 1994, and again in 1996, petitioner sought to have respondent held in contempt for failing to comply with parts of that agreement.  On October 12, 1994, respondent was held in contempt for failing to disclose his tax returns.  On October 15, 1996, he was held in contempt for failing to pay child support.  However, the trial court denied that part of petitioner's motion for a rule to show cause why respondent should not be held in contempt for nonpayment of "special activities," including music lessons, music camps and a bat mitzvah.  

At the 1996 contempt proceedings, respondent moved to compel petitioner to return money paid under a part of their settlement agreement in which respondent promised to give petitioner half the legal fees he earned in 
Ross v. United States
, 86 C 5882 (
Ross
).  The trial court denied the motion.  

Respondent appeals both contempt orders and the denial of his motion for return of fees earned in the 
Ross
 case.  Petitioner cross-appeals the trial court's refusal to hold respondent in contempt for failure to pay for their daughter's "special activities."

Before we consider the substantive issues, we address two jurisdictional issues before us.  Respondent asserts that the trial court lost jurisdiction to enforce the original July 10, 1989, judgment of dissolution so that all subsequent orders based on that judgment are void.  Respondent relies on section 12-108(a) of the Code of Civil Procedure (735 ILCS 5/12-108(a) (West 1996)).  Section 12-108(a) states: "Except as herein provided, no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2-1601 of this Act."  735 ILCS 5/12-

108(a) (West 1996).

Respondent argues that until section 12-108(a) was amended in 1997 (Pub. Act 90-18, §90, eff. July 1, 1997), child support judgments were not excepted from this statute.  We disagree.  Even before section 12-108(a) was amended, we had held that a trial court retains continuing jurisdiction over child support matters.  See 
In re Marriage of Homan
, 126 Ill. App. 3d 133, 466 N.E.2d 1289 (1984).  In 
Homan
 we rejected an argument that a dissolution judgment is unenforceable after seven years under Illinois law.  We held that the court had jurisdiction of a claim for child support arrearage made more than eight years after the judgment of dissolution.

We next address respondent's argument that a trial court order entered on June 3, 1998, while this appeal was pending, divested this court of jurisdiction.  The June 1998 order declared the October 15, 1996, order "null and void" and granted petitioner leave to file a motion to revive the judgment.  The June 3, 1998, order was not appealed and is not part of the record.  Respondent suggests that the June 3, 1998, order remains intact, since "jurisdictional issues can be raised at any time."  We disagree.  "Upon filing a notice of appeal, the trial court is divested of jurisdiction to enter any order involving a matter of substance ***."  
In re Marriage of Sawyer
, 264 Ill. App. 3d 839, 850, 637 N.E.2d 559 (1994).  The trial court retains jurisdiction to decide matters independent of and collateral to a judgment, but is restrained from entering an order that would modify the judgment or its scope.  
Sawyer
, 264 Ill. App. 3d at 850.  The June 1998 order entered by the trial court after respondent filed his notice of appeal was entered without jurisdiction and has no effect on the October 15, 1996, judgment or on this appeal.

We next address respondent's substantive challenges to the trial court's contempt orders.  Respondent argues: (1) the trial court erred in finding him in contempt for failure to disclose tax returns; (2) the child support provision, expressed as a percentage of respondent's income, is unenforceable; (3) the agreement was not clear enough to notify respondent what conduct constitutes contempt; (4) the trial court's finding that respondent willfully disobeyed the court's order was against the manifest weight of the evidence; (5) petitioner is estopped from seeking child support arrearage; (6) the trial court erred in relying on the testimony of petitioner's expert to calculate arrearage; (7) the trial court erroneously ruled that interest on the judgment is mandatory; and (8) the trial court erred in denying respondent's motion for return of fees paid to him for the 
Ross
 case.  

The parts of the child support agreement relevant to this appeal are as follows:

(1) Article II, paragraph 2:

"Husband agrees to and shall pay directly to Wife the sum of $850.00 per month, as and for child support, the same to commence upon the execution of this Agreement and to continue thereafter until as hereinafter set forth ***.

***

Said payments are based on Husband's gross annual income of approximately $71,000.00 and net annual income of approximately $48,000.00." 

(2) Article II, paragraph 3:

"In the event that the Husband's annual income increases, Husband agrees to increase proportionately his support of the minor child so that his child support payments will never be less than 20% of his net annual income.  Conversely, in the event that Husband's annual income decreases, Wife agrees to accept a proportionate decrease in his support of the minor child, as long as that decrease never goes below 20% of Husband's net annual income or $600.00, whichever is greater.  The increase or decrease shall be determined in accordance with the following procedure:  The parties shall submit to each other true and accurate copies of each one's Federal Income Tax Returns and all W-2's and 1099's, within 15 days after each has filed said Return.  If there has been any increase or decrease in Husband's income during the previous year, child support for that year shall be proportionately adjusted to reflect such change and said adjusted sum shall thereupon be allocated over the balance of the calendar year.  Husband will then continue for that year to pay child support based on the increased or decreased income."

(3) Article II, paragraph 6:

"The parties have agreed to share equally the costs of special activities in which the minor child is a participant and to which both parents have agreed.  Such agreement should not be unreasonably withheld by either party.  Examples of such activities are:

a. Summer camp.

b. Music lessons.

c. Religious school ***."

In August 1994, petitioner filed her first motion for a rule to show cause why respondent should not be held in contempt.  She alleged that since the 1989 judgment, respondent had refused to disclose his tax returns as required under Article II, paragraph 3.   On October 12, 1994, the trial court found respondent in indirect civil contempt and ordered him to disclose his tax returns.

On September 6, 1995, petitioner filed a second motion for a rule to show cause why respondent should not be held in contempt for failing to pay child support and pay for certain "special activities."  Petitioner alleged that respondent underpaid child support from August 1989 through December 1993, and that respondent had not paid for half of their daughter's music camps, music lessons, and bat mitzvah.

At a hearing on the motion, accountant Charles Natarelli testified as an expert witness on behalf of petitioner.  Natarelli calculated respondent's child support arrearage based on payments received by petitioner, respondent's tax returns, and the child support directions in the settlement agreement.  He concluded that between August 1989 and December 1994, respondent had underpaid child support by $27,582.88.  Natarelli calculated that respondent owed $10,817.02 in interest.  His calculation of interest was based on the assumption that 9% interest attached when income was earned, rather than when the amount of child support underpaid became due the next year.

Frank Goldstein, a producer of parties and special events, testified that his company was paid about $11,000 for planning a bat mitzvah.  Petitioner then testified about money she had spent over the years on music camps, music lessons, music instruments and for the bat mitzvah.  The daughter took trombone, harp and piano lessons, and attended two music camps.  On cross-examination, petitioner acknowledged that she received a letter from respondent in 1990, advising her that he would increase monthly payments to $900 a month, and another letter in 1993, advising her that his employment was ending and that he planned to reduce payments to $600 a month.  

The trial court denied the motion for a rule to show cause for respondent's alleged failure to pay for half of the music lessons, music camps and bat mitzvah.  The court reasoned that the term "special activities" was too vague to put respondent on notice of the amount owed.  But the court ruled that petitioner made a 
prima facie
 showing that respondent failed to pay child support.

Respondent then testified that he was aware of the parties' agreement that when his income increased, his child support payments would also increase.  Respondent testified that in 1990 and again in 1991 he raised child support by $50 a month.  In 1993, when respondent was told by his employer that his contract would not be renewed, respondent reduced his child support to $600 a month.  In 1994 and again in 1995, respondent and petitioner had "discussions to try to resolve differences."  At that time, respondent testified that he read several appellate cases holding that a child support order expressed as a percentage of income, rather than a dollar amount, was unenforceable.  Believing their child support agreement was unenforceable, he wrote a letter to petitioner.  He told her that, after discussing the matter with his attorney, he would pay $850 a month unless otherwise ordered.  In August 1995, he began paying $850 a month.  

The trial court found respondent in indirect civil contempt and ordered him to pay $33,061.16 in child support and interest.  The court denied both respondent's and petitioner's motions to reconsider.

We first address respondent's argument that the trial court erred when it held him in contempt for failing to produce his tax returns.  Respondent argues that he was not given notice and an evidentiary hearing before he was held in contempt.  

A hearing is required before entry of a finding of indirect civil contempt.  See 
Pryweller v. Pryweller
, 218 Ill. App. 3d 619, 630-31, 579 N.E.2d 432 (1991).  But this record contains no transcript of the proceedings held on petitioner's first motion for rule to show cause.  The copy of the trial court's order in the record is illegible.  We cannot tell, based on this record, what steps were followed, whether respondent asked for a hearing or on what grounds the trial court based its ruling.  Appellant bears the burden of presenting an adequate record for review.  When he fails to do so, we will presume the trial court's ruling was in conformity with the law and had a sufficient factual basis.  
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984).

We next address respondent's challenges to the second finding of contempt.  He argues that the child support directions in the settlement agreement violate section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505(a) (West 1996)).  That section directs that "[t]he final order in all cases shall state the support level in dollar amounts."  750 ILCS 5/505(a)(5) (West 1996)).  Respondent further argues that the trial court erred in finding that the 1989 order is the law of the case and that the trial court had no authority to overrule it.

In response, petitioner argues that respondent's challenge to the 1989 judgment is an improper collateral attack.  Petitioner relies on our supreme court's recent decision in 
In re Marriage of Mitchell
, 181 Ill. 2d 169, 692 N.E.2d 281 (1998).  In 
Mitchell
, the trial court had entered a judgment for dissolution in 1989.  The judgment included an agreement that the husband initially would pay $450 child support per month.  Thereafter, child support was to be recalculated annually to equal 25% of the husband's income.  Six years after judgment was entered, the husband challenged the child support agreement.  The trial court held that the child support order was unenforceable.  The appellate court affirmed.  Our supreme court reversed.  The court first noted that it was error for the original trial court to enter judgment expressing child support in terms of a percentage of income.  But the court then held that the husband was collaterally estopped from challenging the agreement.  The court stated:

"The original dissolution judgment of the trial court awarding child support to be paid as a percentage of net income with fixed dollar limitations is voidable, not void, and is not subject to collateral attack."  
Mitchell
 181 Ill. 2d at 175.

The court further held:

"In this case, the parties had the opportunity to fully litigate this question when the support order was entered, and they had as well the opportunity to bargain for, and benefit from, the terms of the settlement agreement.  Moreover, numerous other support orders could be subject to collateral attack if the present decree were found void."  
Mitchell
, 181 Ill. 2d at 177.

Mitchell
 is directly on point.  Even though the trial court in 1989 erred in ordering child support to be paid as a percentage of income, respondent did not timely challenge the agreement.  He cannot collaterally attack the judgment five years later.  See 
Mitchell
, 181 Ill. 2d at 175.

We also reject respondent's argument that the terms of the agreement were not clear enough to "place[] [respondent] on notice that his actions could be found to constitute contempt of court."  A "'mandate of the court must be clear before disobedience can subject a person to punishment.'"  
Doe v. Lutz
, 253 Ill. App. 3d 59, 65, 625 N.E.2d 325 (1993), quoting 
People v. Wilcox
, 5 Ill. 2d 222, 228, 125 N.E.2d 453 (1955).  To support a finding of contempt, the order must be "so specific and clear as to be susceptible of only one interpretation."  
O'Leary v. Allphin
, 64 Ill. 2d 500, 514, 356 N.E.2d 551 (1976).  "It must not only be capable of reasonable interpretation, but that interpretation must be to the exclusion of other reasonable interpretations; it must be unambiguous."  
O'Grady v. Cook County Sheriff's Merit Board
, 204 Ill. App. 3d 258, 262, 561 N.E.2d 1226 (1990).  We believe that, though calculating child support under the agreement requires some effort each year, the terms of the agreement set out a clear formula.  The child support terms are clear enough to put respondent on notice about the conduct that would violate the order.

Respondent next argues that the trial court's contempt finding was against the manifest weight of the evidence.  He suggests that there was no evidence that he failed to make the payments willfully or acted in bad faith.  

"The power to enforce an order to pay money through contempt is limited to cases of wilful [and contumacious] refusal to obey the court's order."  
In re Marriage of Logston
, 103 Ill. 2d 266, 285, 469 N.E.2d 167 (1984).  The failure to pay child support under a court order or judgment is 
prima facie
 evidence of indirect, civil contempt.  
In re Marriage of Hilkovitch
, 124 Ill. App. 3d 401, 420, 464 N.E.2d 795 (1984).   After a showing of failure to make payment, the burden is on respondent to show his noncompliance was not wilful.  
In re Marriage of Betts
, 155 Ill. App. 3d 85, 98, 507 N.E.2d 912 (1987).  Whether noncompliance is wilful or whether respondent has a valid excuse for noncompliance is a question of fact.  We will only reverse the trial court's decision if it is against the manifest weight of the evidence.  
Betts
, 155 Ill. App. 3d at 99.

Respondent notes that he regularly paid child support and twice raised the amount.  He stresses that he believed the agreement was unenforceable.  But the issue here is not whether respondent acted with good intentions in paying what he thought was appropriate support.  The issue is whether he made a good-faith effort to comply with the formula set out in the dissolution agreement.  Respondent believes he was justified
 in ignoring the order because he thought the child support provisions were void.  As the trial court noted, respondent offered no evidence to show that he tried to comply with the order.  Though respondent argues that the child support directions were too confusing to understand, his testimony reveals the opposite.  If he concluded that the order was contrary to appellate opinions, he must have had a clear notion of what the order meant.  The trial court did not err in finding that respondent's failure to comply was wilful.

Respondent stresses that for years petitioner accepted--

without complaint or demand for tax returns--the amount paid.  But even if the parties agreed to an arrangement different than that set out in the dissolution judgment, it was not sanctioned by the court.  "[A]ny agreement purporting to modify a child-support order must be made in court."  
Betts
, 155 Ill. App. 3d at 99.

In his reply brief, respondent argues for the first time that petitioner's inaction should equitably estop her from seeking past- due child support.  This argument was not raised before the trial court and is waived on appeal.  
Jespersen v. Minnesota Mining & Manufacturing Co.
, 288 Ill. App. 3d 889, 895, 681 N.E.2d 67 (1997).  Even if not waived, "equitable estoppel cannot be created based solely on the petitioner's failure to make a demand for child support upon the respondent over several years or upon the fact she allegedly never brought up the issue of child support."  
Betts
, 155 Ill. App. 3d at 102, citing 
Bodine v. Bodine
, 127 Ill. App. 3d 492, 495, 468 N.E.2d 1004 (1984).

Respondent next argues that the trial court erred in relying on Natarelli's calculations.  Natarelli testified that respondent was underpaying child support immediately after the July 19, 1989, judgment, even though he was paying the $850 specified in the agreement.  Respondent claims that the trial court "alter[ed] the [a]greement 
sua sponte
 by inserting, on the basis of Mr. Natarelli's testimony, new terms into the [a]greement which did not exist prior to Mr. Natarelli's testimony."  

Respondent misinterprets the agreement.  We note that respondent was not in arrears for paying less than 20% of his income in 1989 until he failed to account for the difference the following year.  But the agreement did not except 1989 from the general requirement that child support should be adjusted to equal 20% of income.

Respondent also argues that Natarelli should not have included proceeds from the sale of the marital home in calculating income and that Natarelli erred in calculating interest.  But respondent overlooks that the trial court agreed with him on these points and ordered Natarelli's calculations adjusted.  In all other respects, our review of the record shows that Natarelli's calculations were consistent with the formula set out in the agreement.  

Respondent also argues that tax-reported income is not conclusive evidence of income under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505 (West 1996)).  See 
In re Marriage of Carpel
, 232 Ill. App. 3d 806, 818, 597 N.E.2d 847 (1992).  But the parties' agreement provided that an "increase or decrease [in income] shall be determined" from "Federal Income Tax Returns and all W-2's and 1099's."  Respondent argues that proceeds from the sale of the marital home, which were reported in his tax returns, should not have been included in calculating income.  The trial court took this into account.  Respondent does not suggest any other manner in which his tax returns fail to accurately reflect his income.  

We next address respondent's argument that the trial court erred in finding it had no discretion in awarding interest.  The trial court ruled that section 505(d) of the Illinois Marriage and Dissolution of Marriage Act requires that child support judgments be treated like other judgments in awarding interest.  The trial court then reasoned that the award of interest was mandatory.  

Respondent relies on 
Finley v. Finley
, 81 Ill. 2d 317, 410 N.E.2d 12 (1980)--a case decided before the current section 505(d) was enacted--where our supreme court held that whether to award interest on past-due child support payments is a matter of discretion.

Section 505(d) of the Illinois Marriage and Dissolution of Marriage Act reads:  

"Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against a person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order.  Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced."  750 ILCS 5/505(d)(West 1996).

Petitioner apparently relies on the language in section 505(d) that a child support judgment must be treated as "any other judgment."  We do not believe that this language helps in deciding whether the 9% interest requirement under section 2-1303 of the Code of Civil Procedure (735 ILCS 5/2-1303 (West 1996)) is mandatory, because not all judgments are treated in the same way under section 2-1303.  Interest on a judgment is not always mandatory.  See, 
e.g.
, 
Hadley Gear Manufacturing Co. v. Zmigrocki
, 152 Ill. App. 3d 358, 359, 502 N.E.2d 6 (1986) (notwithstanding section 2-1303, the decision to allow statutory interest is within the discretion of the trial court in chancery matters).

In 
Finley
, our supreme court reasoned that dissolution judgments should be treated more like judgments in chancery proceedings, and "that the allowance of interest on past-due periodic support payments is not mandatory ***, but lies within the sound discretion of the trial judge."  
Finley
, 81 Ill. 2d at 332.  In 
Robinson v. Robinson
, we continued to follow 
Finley
, holding that "in the context of a divorce proceeding, the provisions of section 2-1303 are not mandatory."  
Robinson v. Robinson
, 140 Ill. App. 3d 610, 612, 488 N.E.2d 1349 (1986).  More recently, in 
In re Marriage of Kaufman
, No. 1-97-4553 (September 29, 1998), we examined the impact of section 505(d) on 
Finley
 and concluded that the rule in 
Finley
 remains controlling in dissolution proceedings.  We noted that section 505(d) was enacted to improve child support enforcement and was a predicate for certain federal funding.  We held that the legislature did not contemplate that section 505(d) would change the exercise of discretion in awarding interest on child support judgments.  
Kaufman
, No. slip op. at 8-9.

We conclude that the trial court erred in ruling that it had no discretion to decide whether to award interest.  Remand is appropriate where the exercise of discretion has been frustrated by an erroneous application of law.  See 
People ex rel. Hartigan v. E&E Hauling, Inc.
, 153 Ill. 2d 473, 505, 667 N.E.2d 165 (1992); 
People ex rel. v. Chesapeake & Ohio Ry. Co. v. Donovan
, 30 Ill. 2d 178, 180, 195 N.E.2d 634 (1964).  We reverse the trial court's award of interest and remand for further proceedings consistent with this opinion.   

Respondent next argues that the trial court erred in denying his motion for return of half of the money he earned under a contingency fee contract.  Article V, paragraph 3, of the settlement agreement directs that the parties split a contingency fee earned by respondent in 
Ross v. United States
, 86 C 5882.  
Ross
 was settled in February 1995 and a check for $34,855 was sent to petitioner.  Respondent moved to compel petitioner to return the $34,855, alleging that it had been paid in error.  

Respondent relies on 
In re Marriage of Zells
, 143 Ill. 2d 251, 572 N.E.2d 944 (1991).  There the supreme court held that contingent fees are not marital property and that an agreement to split them is against public policy.  Respondent first argues that the direction to split the fee should not have been included in the agreement because a contingent fee is not marital property.  This challenge to a 1989 judgment is not timely.  Under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 1996), a petition for relief from a judgment must be brought within two years.  See 
Sidwell v. Sidwell
, 127 Ill. App. 3d 169, 174-75, 468 N.E.2d 200 (1984).  We note, however, that a void judgment is subject to collateral attack beyond the two-year period in section 2-1401.  735 ILCS 5/2-1402(f)(West 1996); 
Reynolds v. Burns
, 20 Ill. 2d 179, 192, 170 N.E.2d 122 (1960).  So we must address the merits of respondent's argument that the fee-splitting term in the 1989 judgment is void as against public policy.

We agree that the agreement here implicates public policy concerns.  Under Illinois law, agreements to split fees between a lawyer and a nonlawyer are usually against public policy.  
Zells
, 143 Ill. 2d at 253; 
O'Hara v. Ahlgren, Blumenfeld & Kempster
, 127 Ill. 2d 333, 343, 537 N.E.2d 730 (1989).  Rule 5.4 of the Illinois Rules of Professional Conduct provides that "[a] lawyer or law firm shall not share legal fees with a nonlawyer" except for payments, in certain circumstances, to a deceased lawyer's estate or to nonlawyer employees in compensation or retirement plans.  134 Ill. 2d R. 5.4.  The policy against fee-splitting stems from the concerns that an attorney who has agreed to split fees "may be tempted to devote less time and attention to the cases of the clients whose fees they must share," and that a layperson may have an incentive to recommend an attorney, not based on the lawyer's credentials, but on her own financial interest.  
O'Hara
, 127 Ill. 2d at 343, citing 
Leoris v. Dicks
, 150 Ill. App. 3d 350 (1986).  

We note that petitioner is a lawyer.  But we believe the policy underlying Rule 5.4 is applicable here nonetheless.  Petitioner does not argue that she is entitled to the fees based on services performed as a lawyer.  She does not claim that she recommended respondent's services or worked on the case.  Even if she did, Rule 1.5(f) of the Rules of Professional Conduct prohibits a lawyer from splitting fees with another lawyer who is not in the same firm, unless the client consents and signs an agreement disclosing how the fees and responsibilities will be divided.  134 Ill. 2d R. 1.5(f).

But even though the agreement is against public policy, the parties were equally at fault in entering into it.  Where the parties to a contract against public policy are 
equally at fault, a court will not aid either party, but will leave them both where it finds them.  
O'Hara
, 127 Ill. 2d at 348.  If a party has advanced money under an agreement that is against public policy, that party can obtain no redress.  
Harris v. Johnson
, 218 Ill. App. 3d 588, 594, 578 N.E.2d 1326 (1991).  The trial court did not err in denying respondent's motion for return of the 
Ross
 fees.

We finally address petitioner's cross-appeal.  Petitioner argues that the trial court erred by finding that the agreement with respect to "special activities" was not clear enough to serve as a ground for contempt.

A "'mandate of the court must be clear before disobedience can subject a person to punishment.'"  
Doe v. Lutz
, 253 Ill. App. 3d 59, 65, 625 N.E.2d 325 (1993), quoting 
People v. Wilcox
, 5 Ill. 2d 222, 228, 125 N.E.2d 453 (1955).  As noted earlier, the order must only be capable of one, unambiguous interpretation.  See 
O'Leary
, 64 Ill. 2d at 514; 
O'Grady
, 204 Ill. App. 3d at 262.  

We agree with the trial court that "special activities" is too vague a phrase to support a finding of contempt.  The agreement neither names what "special activities" respondent must contribute to nor makes clear when withholding approval will be unreasonable.  That music lessons and camp are listed in the agreement as examples of "special activities" is of little help.  Nothing in the agreement suggests that respondent is always required to pay half of those expenses.  The agreement leaves respondent some discretion to agree or reasonably disagree to "special activities," even those listed as examples.  Whether respondent's refusal to agree to each activity is "reasonable" can only be decided case by case.  The cost of the activity, how many other activities their daughter is involved in, respondent's income at the time, and the daughter's interest in the activity must be considered.  The agreement does not meet the test for specificity and clarity set out in 
O'Leary
.  We cannot say, based on the wording of the agreement, that respondent was "unambiguously" obligated to pay for half of the expenses petitioner spent on their daughter's activities.

We reverse the trial court's award of interest and remand for further proceedings on that issue consistent with this opinion.  In all other respects, the trial court's judgment is affirmed.

Reversed in part and affirmed in part; cause remanded.

CERDA and BURKE, JJ., concur.