2019 IL App (2d) 170724-U
No. 2-17-0724
Order filed October 22, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* LISA MYERS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-MR-232 |
| GARY MYERS, | ) ) | Honorable Bradley J. Waller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State proved defendant guilty beyond a reasonable doubt of indirect criminal contempt: the trial court could infer that defendant knew that, in denying his motion for permission to report to jail late, the court had ordered him not to report late, which order defendant willfully violated despite the fact that he fraudulently obtained the sheriff's permission.

¶ 2    Defendant, Gary Myers, who was serving time in jail on weekends under a contempt order, appeals the judgment of the trial court finding him in indirect criminal contempt in connection with his reporting late to jail after he attended a school ceremony for his daughter. He contends that the State failed to prove beyond a reasonable doubt that he willfully violated

the court's order, because, although the trial court denied an emergency motion to attend the ceremony, the jail gave him permission. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     In July 2016, the State filed a petition against defendant in his marital dissolution case for adjudication of indirect criminal contempt, alleging that defendant willfully and knowingly violated a trial court order requiring him to surrender to the county sheriff's office at 5 p.m. on Friday June 3, 2016. The trial court had previously found defendant in contempt for failure to pay child support and, in April 2016, remanded him to the sheriff's office for an indefinite term of incarceration with a purge amount of $3500. On May 2, 2016, so that defendant could work, the court modified the terms of incarceration and ordered that defendant would be released from custody during the week but was to surrender himself at 5 p.m. each Friday for incarceration until 5 p.m. each Sunday. Defendant had previously been denied visitation with his children because he refused to comply with court orders, but visitation restrictions were removed in March 2016. Defendant later was unable to exercise visitation because of his incarceration for contempt.

¶ 5     On June 3, 2016, a hearing was held on defendant's *pro se* motion to subpoena witnesses in the underlying marital dissolution case. After discussing that motion, defendant told the court that he also had a motion to reconsider the contempt ruling, a motion to stay, and an emergency motion to attend a ceremony for one of his children. The emergency motion sought to allow him to attend a school ceremony from 6:30 p.m. to 8 p.m. on Friday June 3, 2016, and to extend incarceration to 8:45 p.m. on Sunday. Defendant stated that, due to circumstances beyond his control, he had missed the last five years of the children's events.

¶ 6     The court denied the motions to reconsider and to stay, telling defendant that it had told him all along that he had the key to relieve himself of contempt and he had repeatedly told the court that he did not want to comply. Defendant then asked about his emergency motion, and the court stated that it and the other motions were all denied. Defendant asked to make an offer of proof and the court said "No. Motions are denied." The court also entered a written order denying the motions.

¶ 7     Defendant attended the ceremony, and the State filed the petition for contempt. At the hearing on the matter, before a new judge, the children's mother testified that she saw defendant at the ceremony. Her attorney testified that he became aware through a deputy at the jail that defendant had asked for, and was granted, permission to attend the ceremony, but the deputy was unaware that defendant was previously denied permission from the court to attend. Evidence was provided that defendant reported to the jail at around 9 p.m. that Friday and was released at 8:45 p.m. that Sunday.

¶ 8     Defendant's daughter, L.M., testified that, while out to dinner with defendant, she asked defendant to come to the ceremony. She knew that defendant had to report to jail, but she had spoken to Jackie Hill, a deputy at her school, who told her that defendant could ask the head jailer for permission to stay out late on Friday and leave late on Sunday. She told defendant about that conversation a couple of days before the ceremony. Hill testified and corroborated that she made the suggestion to L.M. on or close to May 31, 2016. Defendant's other daughter, E.M., also testified about discussing the matter with L.M. and how much they wanted him to be at the ceremony.

¶ 9     Defendant testified that L.M. told him about Hill's suggestion. After the court denied his emergency motion, he spoke to deputy Suzanne Ballard, who gave him permission to report late

on Friday and stay late on Sunday. He arrived at the jail at about 8:45 p.m. on Friday, although he was not formally checked in until around 9 p.m. Defendant believed that he could attend the ceremony because he had permission from the county, which had authority over him at that time, "plus there was a conflicting order." Defendant said that Ballard asked him if there were any orders barring him from being in the presence of the children or their mother, which he took to mean as a question as to whether there were any orders of protection. He told Ballard that there were not and did not tell her about the denial of his emergency motion.

¶ 10    Ballard testified that, after talking to her supervisor, she gave defendant permission to attend the ceremony. She asked defendant whether "in his vast expanse of his case" there were "any court orders, any reason, any separation, anything that says he should not be there." She told defendant that, if he showed up and there was any issue, he was to leave. Had defendant told her that the trial court had denied permission, she would not have granted permission. Instead, defendant told her that there was no order that he should not attend.

¶ 11    The trial court found defendant in contempt. The court found that Ballard asked defendant if there was any court order prohibiting him from attending and that he told her no, even though he knew that he was not to attend. The court found that defendant willfully violated the original court order that he report by 5 p.m. and also the order denying his emergency motion. The court sentenced him to 10 days in jail concurrent with the weekends he was already serving. His motions to reconsider were denied, and he appeals.

¶ 12                                    II. ANALYSIS

¶ 13    Defendant contends that the State failed to prove him guilty beyond a reasonable doubt, because, although the trial court denied his emergency motion to attend the ceremony, the jail gave him permission to attend. He argues that, because the court merely denied his motion and

did not specifically state that he could not attend, it was reasonable for him to believe that the jail's permission was sufficient.

¶ 14    "In criminal contempt cases, the State must prove the charges beyond a reasonable doubt." *People ex rel. City of Chicago v. Le Mirage, Inc*., 2013 IL 113482, ¶ 64.    "[I]n reviewing the sufficiency of the evidence in a criminal contempt case, the appropriate standard of review is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis in original)." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).    "This standard respects the fact finder's responsibility for resolving conflicting testimony, weighing the evidence, and drawing reasonable inferences from the evidence." *Id.* "Only where no reasonable fact finder could convict, in which case the conviction would violate due process, should a reviewing court impinge upon the fact finder's role." *Id.*

¶ 15    Contempt of court is defined as conduct that " 'is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute.  (Internal quotation marks omitted.)' " *Id.* ¶ 62 (quoting *People v. Simac*, 161 Ill. 2d 297, 305 (1994)).  A finding of criminal contempt is punitive and is intended to vindicate the dignity and authority of the court.  *Id.*  "Indirect criminal contempt occurs out of the court's presence, and its proof is dependent upon evidence of some kind or upon facts of which the court has no judicial notice." *Id.* ¶ 63.  "[I]n order to sustain a finding of indirect criminal contempt for violating a court order outside the court's presence, two elements must be proved: (1) the existence of a court order; and (2) a willful violation of that order." *Id.* ¶ 65.

¶ 16    To support a finding of contempt, the order must be "so specific and clear as to be susceptible of only one interpretation." *O'Leary v. Allphin*, 64 Ill. 2d 500, 514 (1976).  "It must not only be capable of reasonable interpretation, but that interpretation must be to the exclusion of other reasonable interpretations; it must be unambiguous." *O'Grady v. Cook County Sheriff's Merit Board*, 204 Ill. App. 3d 258, 262 (1990).

¶ 17    For example, in *O'Grady*, the trial court ordered the Sheriff's Merit Review Board to conduct a hearing to decide the issues presented by a complaint.  Jurisdiction had been disputed and had been previously discussed with the court as an issue that the board was expected to decide, but the order did not mention it.  The board set a briefing schedule and then refused to review the allegations in the complaint, based on a lack of jurisdiction.  The trial court found the board in contempt.  The appellate court reversed, noting that jurisdiction was a disputed issue and that it was not only a reasonable, but a necessary, consideration before any allegations in the complaint could be addressed.  Thus, the board's interpretation of the order to mean that it should first settle jurisdiction, and proceed to a hearing only if it found jurisdiction, was reasonable.  Accordingly, the contempt finding was reversed.  *Id.* at 262-63; see also *People v. Oatis*, 56 Ill. App. 3d 613, 618-19 (1977) (reversing a contempt finding based on a *pro se* defendant's violation of a previous admonition when the defendant asked the trial court to clarify it and the court did not do so and the defendant was making a good-faith effort to defend himself).

¶ 18    In *People v. Wilcox*, 5 Ill. 2d 222, 229 (1955), the trial court found the defendant in contempt upon learning that she filed two motions with the clerk of the court after the court denied her leave to do so.  The defendant admitted that the court refused to consider the motions, but she denied that the court instructed her that she could not file the motions.  There was no

order in the record to show that the court instructed the defendant not to file the motions. Thus, in reversing the contempt order, the appellate court determined that there was no showing that an order was clearly given or understandingly received. *Id.* However, *Wilcox* has been distinguished when it was clear from the record that the defendant understood the implications of his actions. *People v. Ernest*, 141 Ill. 2d 412, 423 (1990). "A contumacious state of mind may be inferred from the actions of the party and from the surrounding circumstances." *Id.* at 424.

¶ 19    Here, the focus of the contempt charge was defendant's violation of the order requiring him to report to jail at 5 p.m. on Fridays. That order was clear and unambiguous, and defendant clearly knew of that requirement.

¶ 20    Defendant, however, focusing on the denial of his emergency motion, argues that it was reasonable for him to believe that the permission given by the jail for him to report late was sufficient because the jail had authority over him and the court's order denying his emergency motion did not specifically state that he could not report late or could not ask the jail for permission. But, unlike in *O'Grady*, where the record showed a reasonable alternate interpretation of the court's order, and unlike in *Wilcox*, where the record did not contain the original order, here the record supports the trial court's finding that defendant knew that he was barred by the court from attending the ceremony.

¶ 21    Defendant's emergency motion was very specific in that defendant asked to report late on Friday June 3, 2016, and the court denied that request. The court thus could infer that defendant knew that, by denying the emergency motion, the court barred him from attending the ceremony and that he willfully violated the court's order. In addition, the record shows that the order allowing defendant to serve during weekends was done for the purpose of allowing him to work, not to attend social activities. The record further shows that defendant had a history of refusing

to obey court orders. Indeed, the court denied his motions for precisely this reason. This background further supported the court's conclusion.

¶ 22    Although Ballard gave defendant permission, she testified that she asked defendant whether "in his vast expanse of his case" there were "any court orders, any reason, any separation, anything that says he should not be there." Yet defendant did not tell her of the denial of his emergency motion, even though defendant himself noted his knowledge of the "conflicting order" in his testimony. While defendant said that Ballard asked him only if there were any orders barring him from being in the presence of the children or their mother, which he took to mean as a question as to whether there were any orders of protection, the trial court found Ballard's testimony credible. It was for the trial court to resolve any conflicts in the evidence and draw inferences from that evidence. Here, the trial court could reasonably infer that defendant knew that, by denying the emergency motion, the court had ordered defendant not to report late to jail. Thus, when defendant, contrary to that order and through deception about it, got permission from the jail, he willfully violated the trial court's order. Accordingly, the trial court appropriately found beyond a reasonable doubt that defendant was guilty of contempt.

¶ 23    It is not lost on this court that this result may seem harsh in light of defendant's daughters' requests that he attend an important milestone event. However, there is clearly a history here of defendant failing to comply with court orders, and we must defer to the trial court's familiarity with that history.

¶ 24                          III. CONCLUSION

¶ 25    Defendant was proved in contempt beyond a reasonable doubt. Accordingly, the judgment of the circuit court of De Kalb County is affirmed.

¶ 26    Affirmed.