THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel.* MARGARET WISZOWATY, n/k/a Margaret Mihaila, Petitioner-Appellant, v. MARK WISZOWATY, Respondent-Appellee.

First District (6th Division)   No. 1—08—1080

Opinion filed August 14, 2009.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellant.

No brief filed for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

The primary issue on appeal is whether simple interest on past-due child support payments became mandatory as early as May 1, 1987, the effective date of certain amendments to section 12—109 of the Code of Civil Procedure (735 ILCS 5/12—109 (West 2006)) (hereinafter Code) and section 505 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505 (West 2006)) (hereinafter

Act). The appellant contends that when read in combination, these amendments reveal that the First District's opinion in *In re Marriage of Steinberg*, 302 Ill. App. 3d 845, 706 N.E.2d 895 (1998), was wrongly decided and that the Fourth District's opinion in *Burwell v. Burwell*, 324 Ill. App. 3d 206, 753 N.E.2d 1259 (2001), is a correct statement of the 1987 law. It is undisputed that interest on late child support was mandatory as of January 1, 2000, the effective date of an additional amendment to section 505 of the Act. 750 ILCS 5/505 (West 2000).

Because this issue concerns undisputed facts and a question of law, we address it *de novo*, without any deference to the circuit court's conclusions. *In re Marriage of Kaufman*, 299 Ill. App. 3d 508, 509, 701 N.E.2d 186, 187 (1998).

Appellee Mark Wiszowaty and Margaret Mahaila were married to each other for about three years during their early twenties. They divorced in 1991, shortly before their only child's second birthday. Pursuant to a settlement agreement, a divorce judgment order was entered which required Mark to pay $48 in child support per week, by tendering payments to the clerk of the circuit court of Cook County, until the child's eighteenth birthday in 2007. Mark complied with the order for less than six months, although he purportedly paid Margaret directly until 1993. In 2005, appellant Illinois Department of Healthcare and Family Services filed a petition to intervene in the case and a petition for rule to show cause as to why Mark should not be held in contempt of court. The Department sought $36,336 in unpaid support and $23,571 in mandatory and discretionary interest. The Department subsequently revised the total amount it was seeking to approximately $64,000. Mark conceded the arrearage and that interest became mandatory when section 505(d) of the Act was amended effective January 1, 2000 (750 ILCS 5/505(d) (2000)), but argued the circumstances did not warrant discretionary interest prior to that date. The Department countered that the 2000 legislation was a clarification of the law and that interest became mandatory on May 1, 1987, pursuant to section 12—109 of the Code—which was well before the couple divorced in 1991 and well before Mark began ignoring the circuit court's judgment order. 735 ILCS 5/12—109 (West 2006). In essence, the Department was seeking $10,000 more than Mark was willing to concede. After testimony and arguments, the circuit court found Mark's position persuasive, awarded interest after 2000 as mandated by statute, and rejected the Department's request for discretionary interest prior to 2000. By agreement, a judgment of $52,889 was entered against Mark which is to be satisfied at the rate of $1,000 per month beginning April 1, 2008. This appeal followed.

Mark did not file a brief in support of the circuit court's order. In *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976), the supreme court indicated that when a record on appeal is simple, the claimed error is simple, and a reviewing court can easily decide the issues without the benefit of the appellee's brief, the reviewing court should proceed to the merits of the appeal. Because this appeal fits within those parameters, we address the merits of the Department's arguments.

There are numerous opinions indicating dissolution proceedings are an exception to mandatory interest statutes. Many of these rulings stem from *Finley v. Finley*, 81 Ill. 2d 317, 410 N.E.2d 12 (1980), in which the supreme court held that the imposition of interest on child support judgments is a matter within the trial court's discretion. *Finley* involved a father of four who had unilaterally decreased the amount of his support payments by 25% as each child became emancipated. *Finley*, 81 Ill. 2d at 321, 410 N.E.2d at 14. The circuit court found that a parent needs leave of court to reduce his or her child support payments and entered judgment on the arrearage. *Finley*, 81 Ill. 2d at 331, 410 N.E.2d at 19. The court also awarded interest which on appeal the father argued was an abuse of discretion and the mother argued was mandatory pursuant to section 3 of the Interest Act. *Finley*, 81 Ill. 2d at 331, 410 N.E.2d at 19, citing Ill. Rev. Stat. 1977, ch. 74, par. 3. When the supreme court considered *Finley* in 1980, there was no statute which specifically addressed interest on past-due child support payments, but there were two general statutes about interest on money judgments. Section 3 of the Interest Act, which the mother relied upon (*Finley*, 81 Ill. 2d at 331, 410 N.E.2d at 19), provided that "judgments recovered before any court shall draw interest at the rate of 8% per annum from the date of the judgment until satisfied." Ill. Rev. Stat. 1977, ch. 74, par. 3. (While *Finley* was pending, the interest rate was changed from 8% to 9%. Pub. Act 81—874 §1, eff. January 1, 1980.) Section 7 of the Judgment Act, which was not specifically addressed in *Finley*, similarly stated "[e]very execution issued upon a judgment shall bear interest thereon, from the date of the recovery of the judgment until the same is paid, at the rate of 8% per annum." Ill. Rev. Stat. 1979, ch. 77, par. 7.

The supreme court acknowledged that each party's position was supported by a line of appellate court authority, but the court did not discuss the conflicting lines of precedent or parse the statutory language. *Finley*, 81 Ill. 2d at 331, 410 N.E.2d at 19. Instead, the court turned to one of its own prior opinions indicating that a divorce

proceeding (a statute-based action[1]) is similar in nature to a chancery proceeding, and thus subject to the same equitable principles. *Finley*, 81 Ill. 2d at 332, 410 N.E.2d at 19. A judge presiding over an action based in equity has discretion to award or deny interest. *Finley*, 81 Ill. 2d at 332, 410 N.E.2d at 19. The supreme court found that, therefore, interest on past-due child support installments was also a matter of judicial discretion. *Finley*, 81 Ill. 2d at 332, 410 N.E.2d at 19. In effect, the supreme court held that divorce actions are exempt from general interest provisions.

Although the supreme court had plainly concluded that dissolution judgments were different from other money judgments, *Finley*'s filing in 1980 did not provoke a response from the Illinois legislature. When the Code of Civil Procedure took effect on July 1, 1982 (Pub. Act 82—280, eff. July 1, 1982), section 3 of the Interest Act was transferred to section 2—1303 of the Code and section 7 of the Judgment Act would become known as section 12—109 of the Code. 735 ILCS 5/2—1303 (West 1998) ("[j]udgments recovered [before] any court shall draw interest"); 735 ILCS 5/12—109 (West 1998) ("[e]very judgment *** shall bear interest thereon"). The General Assembly had an additional opportunity to correct any judicial misconstruction of the law when it enacted Public Act 83—707, which had an effective date of September 23, 1983. Pub. Act 83—707 §1, eff. September 23, 1983 (amending Ill. Rev. Stat. 1981, ch. 110, par. 2—1303). Pursuant to this legislation, the first phrase in section 2—1303, "Judgments recovered *before* any court shall draw interest," was changed to "Judgments recovered *in* any court shall draw interest." (Emphasis added.) Pub. Act 83—707 §1, eff. September 23, 1983. In 1984, the General Assembly did away with the apparent duplication of the two statutes by amending section 12—109 of the Code to simply incorporate section 2—1303 of the Act. *Burwell*, 324 Ill. App. 3d at 211, 735 N.E.2d at 1260 (Cook, J., dissenting) (explaining the source of the apparent duplication in statutes). After the 1984 amendment, section 12—109 of the Code simply read: "Every judgment shall bear interest thereon as provided in Section 2—1303." Ill. Rev. Stat. 1985, ch. 110, par. 12—109. This lack of substantive and relevant change to the law is significant because the General Assembly is presumed to know how its laws are being construed in the courts.

> "It is a well-established principle of statutory construction that 'where terms used in [a] statute have acquired a settled meaning through judicial construction and are retained in subsequent

---

[1]Dissolution of marriage is entirely statutory in origin and nature. *In re Support of Josic*, 78 Ill. App. 3d 347, 350, 397 N.E.2d 204, 207 (1979).

amendments or re-enactments of the statute, they are to be understood and interpreted in the same sense theretofore attributed to them by the court unless a contrary intention of the legislature is made clear.' [Citations.] This rule is based upon the view that 'the judicial construction [of a statute] becomes a part of the law, and it is presumed that the legislature in passing the law knew [of] such construction of the words in the prior enactment.' [Citation.]

A related principle of statutory construction is that '[w]here the legislature chooses not to amend a statute after a judicial construction, it will be presumed that it has acquiesced in the court's statement of the legislative intent.' [Citations.]" *In re Marriage of O'Neill*, 138 Ill. 2d 487, 495-96, 563 N.E.2d 494, 498 (1990).

Later, in *Robinson*, *Finley*'s rationale was applied to an attorney's claim for fees which had been incurred by the wife but shifted to the husband by their divorce decree. *Robinson v. Robinson*, 140 Ill. App. 3d 610, 488 N.E.2d 1349 (1986); *Finley*, 81 Ill. 2d 317, 410 N.E.2d 12. When the husband failed to pay the legal fees as required by the judgment order, the lawyer argued section 2—1303 of the Code of Civil Procedure entitled counsel to a mandatory rather than discretionary award of interest on the judgment debt. *Robinson*, 140 Ill. App. 3d at 610-11, 488 N.E.2d at 1350. The appellate court acknowledged, "The language of section 2—1303 would appear to be mandatory because it states that '[j]udgments *** *shall* draw interest' (emphasis added), and it also refers to judgments recovered before 'any' court and judgments entered upon 'any' award, report or verdict." *Robinson*, 140 Ill. App. 3d at 612, 488 N.E.2d at 1350. However, given the supreme court's finding in *Finley* that divorce proceedings are subject to the rules that are applicable to chancery proceedings, and that interest is discretionary in chancery proceedings, the appellate court determined that interest on the divorce attorney's unpaid fee award was also discretionary. *Robinson*, 140 Ill. App. 3d at 612, 488 N.E.2d at 1351, citing *Finley*, 81 Ill. 2d 317, 410 N.E.2d 12.

The Department calls our attention to the seemingly contrary decision issued in *In re Marriage of Passiales*, 144 Ill. App. 3d 629, 631-32, 494 N.E.2d 541, 544-45 (1986), after the husband, a resident of Minnesota, sued his wife, a resident of Iowa, for divorce in Illinois and obtained a default judgment. The circuit court granted the wife's petition to vacate the dissolution judgment for lack of subject matter jurisdiction, awarded her $7,500 in attorney fees (*Passiales*, 144 Ill. App. 3d at 631, 494 N.E.2d at 544), and levied 7% interest on any unpaid portion of the new judgment, but stayed the new judgment for 120 days (*Passiales*, 144 Ill. App. 3d at 633, 494 N.E.2d at 545). The

wife persuasively argued on appeal that the 7% rate and the stay period were inconsistent with a statute then providing that " '[j]udgments recovered [before] any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied.' " *Passiales*, 144 Ill. App. 3d at 639-40, 494 N.E.2d at 545, quoting Ill. Rev. Stat. 1983, ch. 110, par. 2—1303. Based on section 2—1303's wording and relevant case law, the appellate court found that the trial judge "had no authority to alter the statutory accrual of interest on a judgment," and thus "erred in staying the judgment and imposing a 7% interest rate." *Passiales*, 144 Ill. App. 3d at 640, 494 N.E.2d at 550; Ill. Rev. Stat. 1983, ch. 110, par. 2—1303. Contrary to the Department's suggestion, the court was not indicating that interest awards are mandatory rather than discretionary in divorce actions. The case focused on the rate and accrual date of an interest award. *Passiales*, 144 Ill. App. 3d at 639-40, 494 N.E.2d at 550. We read *Passiales* to stand for the proposition that when a divorce court, in its discretion, awards interest, it has no authority to deviate from the interest rate or accrual date established by the General Assembly. *Passiales*, 144 Ill. App. 3d at 640, 494 N.E.2d at 550. Therefore, *Passiales* is in harmony with *Finley*'s clear holding that interest awards are discretionary rather than mandatory in divorce proceedings. *Passiales*, 144 Ill. App. 3d 629, 494 N.E.2d 541; *Finley*, 81 Ill. 2d 317, 410 N.E.2d 12.

There were, nevertheless, three subsequent appeals concerning the relevance of section 2—1303 of the Code (735 ILCS 5/2—1303 (West 2000)) in dissolution actions. In *In re Marriage of Morris* and *In re Marriage of Sloane*, the First and Second Districts of the Appellate Court found *Finley* did not apply to payments required by marital property settlement agreements which had been incorporated into dissolution judgments. *In re Marriage of Morris*, 190 Ill. App. 3d 293, 297, 546 N.E.2d 734, 737 (1989); *In re Marriage of Sloane*, 255 Ill. App. 3d 653, 659, 628 N.E.2d 1198, 1202 (1993). Both courts reasoned that a court is not exercising its equitable powers when it incorporates a marital settlement agreement (a contract between the parties) into a court order. *Morris*, 190 Ill. App. 3d at 297, 546 N.E.2d at 737 ("the basis for the equitable consideration in *Finley* is wholly absent here"); *Sloane*, 255 Ill. App 3d at 659, 628 N.E.2d at 1202 ("[s]ince the judge exercised no equitable decision in entering the judgment of dissolution, the rationale in *Robinson* and *Finley* does not apply in this case"). Therefore, both courts found section 2—1303's mandatory interest language ("shall" and "any") should have been applied to the parties' unsatisfied payment obligations. *Morris*, 190 Ill. App. 3d at 298, 546 N.E.2d at 737; *Sloane*, 255 Ill. App. 3d at 659, 628 N.E.2d at 1202.

More recently, however, in *In re Marriage of Carrier*, the Second District reversed course and adhered to *Finley*'s rationale, even in the context of a marital property settlement. *In re Marriage of Carrier*, 332 Ill. App. 3d 654, 773 N.E.2d 657 (2002). In that case, the ex-husband had failed to transfer funds from his individual retirement account to his ex-wife in accordance with a dissolution judgment which incorporated a marital settlement agreement, and the circuit court ordered him to not only effectuate the transfer but to also pay her 9% postjudgment interest pursuant to section 2—1303 of the Code. *Carrier*, 332 Ill. App. 3d at 655, 773 N.E.2d at 659, citing 735 ILCS 5/2—1303 (West 2000). The former husband challenged the ruling, contending the statute's mandatory language was inapplicable to divorce proceedings and that even though the court could have awarded interest in its discretion, such an award was unwarranted in his case. *Carrier*, 332 Ill. App. 3d at 657-58, 773 N.E.2d at 661. The Second District first construed the terms of the parties' contract (*Carrier*, 332 Ill. App. 3d at 658, 773 N.E.2d at 661 ("Interpreting the terms of a marital settlement agreement is a matter of contract construction")) and then addressed the interest award:

> "After a careful reexamination, we agree that *Sloane* improperly narrowed the scope of *Finley*. Simply because the parties have entered into a settlement agreement resolving the issues in dispute does not change the character and the nature of the dissolution proceeding. The trial court does not abandon its equitable powers over the parties and the subject matter simply because the parties have entered into a marital settlement agreement. [Citation.] The proceeding remains in the nature of a chancery proceeding and the rules governing such proceedings still apply. *Finley*, 81 Ill. 2d at 332. We find no compelling support for our conclusion in *Sloane* that a judgment entered pursuant to a marital settlement agreement somehow transmutes the nature of a dissolution proceeding for purposes of section 2—1303. Indeed, we note that our conclusion in *Sloane* lacks any citation to authority. Accordingly, we overrule *Sloane* as it is irreconcilably inconsistent with *Finley* [and we find the award of judgment interest in this case was discretionary]." *Carrier*, 332 Ill. App. 3d at 660, 773 N.E.2d at 663.

In short, there is a clear line of authority running from *Finley* to *Carrier* which may be cited for the general proposition that dissolution judgment orders, whether they concern child support, maintenance, property settlements, or attorney fees, are not subject to mandatory interest; however, when interest is awarded in the court's discretion, it must be at the rate and any other accrual terms specified by the legislature. *Finley*, 81 Ill. 2d 317, 410 N.E.2d 12; *Carrier*, 332 Ill. App. 3d 654, 773 N.E.2d 657; 735 ILCS 5/2—1303 (West 2006).

With these general principles in mind, we delve further into the legislation and precedent specifically at issue on appeal. In 1987, two other relevant legislative amendments took effect when Public Act 85—2 amended both section 12—109 of the Code and section 505 of the Act effective May 1, 1987. Where the 1984 version of section 12—109 of the Code simply referred to section 2—1303 of the Act, stating, "Every judgment shall bear interest thereon as provided in [s]ection 2—1303" (Ill. Rev. Stat. 1985, ch. 110, par. 12—109), the 1987 version of section 12—109 added a sentence which created a 30-day grace period on interest calculations on late child support:

"Every judgment except those arising by operation of law from child support orders shall bear interest as provided in Section 2—1303. Every judgment arising by operation of law from a child support order shall bear interest as provided in Section 2—1303 commencing 30 days from the effective date of each such judgment." 735 ILCS 5/12—109 (West 1998).

In the same public act, the legislature added a new paragraph to section 505 of the Act. 750 ILCS 5/505 (West 2006). Section 505 is a broad statute which provides for the imposition of child support, states guidelines for calculating an appropriate award, and authorizes enforcement measures, such as contempt findings and the suspension of driving privileges. See 750 ILCS 5/505 (West 2006). What is now known as subsection (d) of the Act was adopted effective May 1, 1987:

"Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order. Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced. A lien arises by operation of law against the real and personal property of the noncustodial parent for each installment of overdue support owed by the noncustodial parent." 750 ILCS 5/505(d) (West Supp. 1997).

This legislation set the stage for *In re Marriage of Kaufman*, 299 Ill. App. 3d 508, 701 N.E.2d 186 (1998), in which the former wife sought interest on past-due spousal maintenance, arguing that section 2—1303 made interest mandatory, that *Finley*'s holding did not apply to maintenance payments, and that even if *Finley* did apply, the legislature enacted section 505(d) of the Act in response to *Finley* and made interest mandatory. *Finley*, 81 Ill. 2d 317, 410 N.E.2d 12. The appellate court dispensed with her section 2—1303 argument by surveying *Finley* and related cases and concluding "the clear weight of

authority" left the allowance of interest on all dissolution judgments within the discretion of the circuit court. *Kaufman*, 299 Ill. App. 3d at 511, 701 N.E.2d at 188. The court also rejected her contention that section 505(d) was intended to make interest awards mandatory, by first pointing out that the language added to the statute in 1987 did not refer to "interest" in any way, and that a court looks for the legislature's intent in the statutory language. *Kaufman*, 299 Ill. App. 3d at 512, 701 N.E.2d at 189. Next, the court pointed out, although the legislation stated each dissolution judgment was to " 'have the full force, effect and attributes of any other judgment of this State,' " not all Illinois judgments have been treated the same when it comes to an interest award—notably dissolution judgments have been subject to discretionary interest, rather than mandatory interest. *Kaufman*, 299 Ill. App. 3d at 512, 701 N.E.2d at 189. Finally, the court consulted the legislative history of section 505(d), which revealed the sole reason for adding this paragraph was to comply with a federal law so that Illinois would not lose $21 million in federal funds. *Kaufman*, 299 Ill. App. 3d at 512, 701 N.E.2d at 189. The federal law was intended to improve child support enforcement by "prevent[ing] retroactive reduction of child support payment and *** prevent fathers in arrearage from going to another state and having a court there wipe out the arrearage." *Kaufman*, 299 Ill. App. 3d at 512, 701 N.E.2d at 189. Therefore, the court concluded, despite the new language in section 505, *Finley* was still controlling. *Kaufman*, 299 Ill. App. 3d at 513, 701 N.E.2d at 189. Although *Kaufman* concerned past-due maintenance, the same arguments regarding section 505(d) were offered with respect to past-due child support in *Steinberg*, and the same reasoning was used to reject them. *Steinberg*, 302 Ill. App. 3d at 856, 706 N.E.2d at 903.

In the instant case, the circuit court adhered to *Steinberg*'s holding that interest on past-due child support remained discretionary, not mandatory, after the 1987 legislation. *Steinberg*, 302 Ill. App. 3d at 856, 706 N.E.2d at 903. Although the Department cited the Fourth District's contrary conclusion in *Burwell*, 324 Ill. App. 3d 206, 753 N.E.2d 1259, the circuit court, sitting in the First District, declined to rely on that opinion. The circuit court also found the equities did not support discretionary interest. It was, however, undisputed that the addition of the following subparagraph to section 505(b) of the Act subjected unpaid child support obligations to mandatory interest effective January 1, 2000:

"A support obligation, or any portion of a support obligation, which becomes due and remains unpaid for 30 days or more shall accrue interest at the rate of 9% per annum." 750 ILCS 5/505(b) (West 2000).

See also Pub. Act 91—397, eff. January 1, 2000.[2]

After the parties agreed on the amount of child support that was in arrears, added the mandatory interest accruing as of January 1, 2000, and agreed on payment terms, the court signed a written judgment order incorporating their figures.

This review of the relevant facts, precedent, and legislation brings us to the Department's contention that we should find the majority opinion in *Burwell* persuasive. *Burwell*, 324 Ill. App. 3d 206, 753 N.E.2d 1259. We do not. In *Burwell*, the Fourth District seemed to think it significant that the Illinois legislature simultaneously amended section 505 of the Act and section 12—109 of the Code, and that no prior court has expressly addressed the impact of section 12—109 of the Code. *Burwell*, 324 Ill. App. 3d at 209, 753 N.E.2d at 1260-61. The court was implicitly following the principle of statutory interpretation that statutes addressing the same subject, or statues *in pari materia*, should be, if possible, construed together so as to harmonize and give full force and effect to the provisions of each. *People ex rel. Vuagniaux v. City of Edwardsville*, 284 Ill. App. 3d 407, 413, 672 N.E.2d 40, 44 (1996). This principle is particularly relevant where the statutes were passed on the same day and are to take effect on the same day. *Vuagniaux*, 284 Ill. App. 3d at 413, 672 N.E.2d at 44. In our opinion, the *Burwell* majority disregarded the additional principle of statutory interpretation that the legislature enacts laws with full knowledge of existing laws and the construction those laws have been given by the courts. *People ex rel. Klaeren v. Village of Lisle*,

---

[2]The now-current version of the Act incorporates section 12—109 of the Code rather than specifying a particular rate of interest on unpaid child support:

"A support obligation, or any portion of a support obligation, which becomes due and remains unpaid as of the end of each month, excluding the child support that was due for that month to the extent that it was not paid in that month, shall accrue simple interest as set forth in Section 12—109 of the Code of Civil Procedure. An order for support entered or modified on or after January 1, 2006 shall contain a statement that a support obligation required under the order, or any portion of a support obligation required under the order, that becomes due and remains unpaid as of the end of each month, excluding the child support that was due for that month to the extent that it was not paid in that month, shall accrue simple interest as set forth in Section 12—109 of the Code of Civil Procedure. Failure to include the statement in the order for support does not affect the validity of the order or the accrual of interest as provided in this Section." 750 ILCS 5/505(b) (West 2006).

316 Ill. App. 3d 770, 782, 737 N.E.2d 1099, 1110 (2000). The *Burwell* majority did not adequately consider the two statutes in their historical context and reached a conclusion that is not well-founded. *Burwell*, 324 Ill. App. 3d 206, 753 N.E.2d 1259.

As set out in *Kaufman*, the amendment to section 505 the Act, adding what is now subsection (d), was motivated by a federal law seeking consistent treatment of child support orders throughout the United States so there would be no retroactive reduction of child support by courts in other states. *Kaufman*, 299 Ill. App. 3d at 512, 701 N.E.2d at 189. The legislation protected the flow of $21 million in federal funds to Illinois. *Kaufman*, 299 Ill. App. 3d at 512, 701 N.E.2d at 189. The *Burwell* majority disregarded this legislative history. Although the *Burwell* majority correctly stated that *Kaufman*'s analysis of section 505(d) was only *dicta* because *Kaufman* concerned maintenance not child support, *Steinberg* adopted *Kaufman*'s analysis in the context of past-due child support. *Burwell*, 324 Ill. App. 3d at 209-10, 753 N.E.2d at 1261; *Kaufman*, 299 Ill. App. 3d at 512, 701 N.E.2d at 189; *Steinberg*, 302 Ill. App. 3d at 856, 706 N.E.2d at 903.

The *Burwell* majority attempted to discredit *Steinberg* on the grounds that *Steinberg* did not expressly address the 1987 amendment to section 12—109; however, there was no reason for *Kaufman* or *Steinberg* to discuss a statutory revision that did not concern mandatory versus discretionary interest awards. *Kaufman*, 299 Ill. App. 3d at 512, 701 N.E.2d at 189; *Steinberg*, 302 Ill. App. 3d at 856, 706 N.E.2d at 903. The majority isolated and placed undue emphasis on the use of the word "shall" in the 1987 version of section 12—109. 735 ILCS 5/12—109 (West 1998). A comparison of section 12—109 both before and after the amendment reveals that the legislature intended for the courts to treat child support judgments differently from other money judgments. As we set out above, the pre-1987 version of section 12—109 consisted of one sentence, "Every judgment shall bear interest thereon as provided in Section 2—1303" (Ill. Rev. Stat. 1985, ch. 110, par. 12—109), and the 1987 version consisted of two sentences:

> "Every judgment except those arising by operation of law from child support orders shall bear interest thereon as provided in Section 2—1303. Every judgment arising by operation of law from a child support order shall bear interest as provided in Section 2—1303 commencing 30 days from the effective date of each such judgment." 735 ILCS 5/12—109 (West 1998).

The difference between the two versions is the addition of a 30-day grace period for child support orders. The dissenting justice in *Burwell* aptly pointed out:

"The legislative intent in amending section 12—109 of the Code was to add a 30-day grace period, not to change the rule [discussed in *Finley*, 81 Ill. 2d at 332, 410 N.E.2d at 19,] that the award of interest on past-due child support is discretionary. If the legislature intended to change such a long-standing and sensible rule, it would have done so explicitly." *Burwell*, 324 Ill. App. 3d at 213, 753 N.E.2d at 1263-64 (Cook, J., dissenting).

Moreover, the word "shall" in section 12—109 and the word "shall" in section 2—1303 should be construed consistently. 735 ILCS 5/12—109 (West 1998); 750 ILCS 5/505 (West 2006). We are mindful of how *Finley* and related cases such as *Robinson* and *Passiales* treated the word "shall" in the context of dissolution actions and that the legislature did not subsequently amend the statute. *Finley*, 81 Ill. 2d at 332, 410 N.E.2d at 19 (concluding that unlike other judgments, judgments on past-due child support do not draw interest unless the court orders so in its discretion); *Robinson*, 140 Ill. App. 3d at 612, 488 N.E.2d at 1350 (finding, in light of *Finley*, that mandatory language "shall" in interest statute did not mandate award of interest in dissolution action); *Passiales*, 144 Ill. App. at 631, 494 N.E.2d at 544-45 (finding that dissolution court, which granted discretionary interest, had no authority to deviate from mandatory statutory interest rate or accrual date). The legislature is presumed to be aware of these decisions. *O'Neill*, 138 Ill. 2d 487, 563 N.E.2d at 498 (judicial construction becomes part of law, lack of subsequent amendment is acquiescence to court's statement of legislative intent); *Klaeren*, 316 Ill. App. 3d at 782, 737 N.E.2d at 1110 (reenactment without modification is endorsement of prior judicial construction). These cases gave limited application to the terms the *Burwell* majority found so compelling. *Burwell*, 324 Ill. App. 3d 206, 753 N.E.2d 1259.

Continuing with the dissent's line of reasoning that our legislature would have been clear and explicit if it had intended to change *Finley*'s long-standing rule, we note that when the legislature did in fact make interest mandatory in 2000, it did so not by refining the wording of section 505(d) or section 12—109, but by adding a new and separate paragraph in subsection 505(b), which we quoted above. 750 ILCS 5/505(b), (d) (West 2000); 735 ILCS 5/12—109 (West 2006).

Accordingly, we conclude *Burwell* lacks substantive support, we reject the Department's contention that the 2000 statutory amendment was merely a clarification of the 1987 statutory amendment, and we decline to depart from the holding in *Steinberg*. *Burwell*, 324 Ill. App. 3d 206, 753 N.E.2d 1259; *Steinberg*, 302 Ill. App. 3d 845, 706 N.E.2d 895. The trial judge's interpretation of the law was correct, and we affirm her conclusion.

In the alternative, the Department argues the court abused its discretion by denying interest on the child support obligations that accrued prior to January 1, 2000. Again, the parties agreed on the amount of the arrearage and the interest that began accruing as of January 1, 2000, but not on interest prior to that date. After counsel argued their interpretation of the law and the parties testified, the trial judge stated her conclusions about the law and the facts, first finding that interest was discretionary prior to the legislation that took effect in 2000. The judge also indicated it was difficult to be certain about what occurred between the parties; however, she believed Mark's testimony that the parties quarreled about child support in 1993, that the disagreement escalated to the point that Mark questioned whether he was the child's father, and that Margaret responded to the effect that Mark was not the father, did not need to see the child, and did not need to pay child support. Margaret denied making these statements. Mark also testified, "I was ignorant of the law. I figured if I don't see him, I don't pay." The judge characterized the circumstances as "a money-for-child type of dispute between them" which was not a legal justification for Mark to stop complying with the court order, but "it happens all the time, unfortunately," and "[i]t's been going on since the beginning of divorce cases." The judge also pointed out that after the purported argument, Margaret did not attempt to enforce the child support obligation until October 2005, just prior to the child's emancipation (according to the record on appeal, the current round of proceedings began in December 2005). "[Taking] the entire factual scenario into account," the judge was, accordingly "going to limit the interest to the day that the statute was amended [as of the year 2000]."

The Department now contends the judge "should have been more skeptical of Mark's version of events" and "should have considered Margaret more credible." The Department argues Mark was not credible because prior to the hearing he claimed in writing that Margaret had "absconded" with the child "[i]mmediately" after the divorce and that this prevented him from complying with his support obligation, but he subsequently testified that for some months after the divorce he knew where Margaret and the child were living and he attributed his nonpayment to doubts about the child's paternity. The Department also emphasizes that Mark testified that he paid some of the child support directly to Margaret, but he did not provide the court with any documentary proof. The Department argues that Margaret, in contrast, bolstered her claim of nonpayment by offering the trial judge a printout of the State's records of the few payments it had received from Mark. The Department also contends that even if Mark

lost contact with Margaret, he should have been making payments to the State, and that the court's rejection of the full interest claim has rewarded Mark for his failure to support his son. The Department characterizes the ruling as an unreasonable or arbitrary one which should be reversed on appeal.

We do not find this argument persuasive. The Department has supported its argument with irrelevant case law. There were no credibility issues or facts in dispute in either *Jones v. Rallos*, 384 Ill. App. 3d 73, 89, 890 N.E.2d 1190, 1205 (2008), or *In re Marriage of Thompson*, 357 Ill. App. 3d 854, 829 N.E.2d 419 (2005), and, therefore, no analysis pertinent to the current appeal. A more helpful case is *In re Marriage of Homan*, 126 Ill. App. 3d 133, 134, 466 N.E.2d 1289, 1290 (1984), in which the father failed to abide by a divorce decree requiring him to pay $50 a week in child support, allegedly because the mother refused his payment offers and told him that if he did not see the children she would not take support payments. The mother, however, denied having that conversation, stated that she never prevented him from visiting their children, and sought 10 years of past-due child support. *Homan*, 126 Ill. App. 3d at 134, 466 N.E.2d at 1290. The trial judge found her to be the more credible of the two and ruled in her favor. *Homan*, 126 Ill. App. 3d at 135, 466 N.E.2d at 1290. When the father sought review, the appellate court indicated that the credibility of witnesses and the weight afforded their testimony are questions to be determined by the trial judge, and that an appellate court will not substitute its judgment as to credibility unless the findings of the trial judge are against the manifest weight of the evidence. *Homan*, 126 Ill. App. 3d at 136, 466 N.E.2d at 1291-92. Therefore, contrary to the Department's argument, we should not attempt to second-guess the trial judge's credibility determinations based on the cold transcript of the proceedings and the parties' actions in 2005. Rather, we must consider all the evidence that was adduced and determine whether the ruling is inconsistent with its manifest weight.

The record does not support that conclusion. The evidence was conflicting and could have been resolved in either party's favor. The judge observed the parties' demeanor while testifying and was in the best position to determine which was the more credible. Margaret's testimony was consistent with the fact that she held several jobs and relied on public transportation in order to provide for herself and the child, and, thus, was unlikely to forgo child support payments. However, she acknowledged that the parties had a heated argument and Mark's testimony was consistent with the fact that she did not promptly enforce the child support terms. The trial judge could have reasonably believed that the parties agreed to modify the child support

terms of their 1990 marital settlement agreement. Even so, judgment against Mark for the arrearage was appropriate because (1) modification or termination of a child support obligation is a judicial function, to be administered prospectively and at the court's discretion; (2) Mark did not return to court in 1993 to obtain an order reflecting the parties' alleged new agreement; and (3) past-due installments of child support are a vested right of the recipient. *Hoos v. Hoos*, 86 Ill. App. 3d 817, 821, 408 N.E.2d 752, 755 (1980) (modification of child support is at the court's discretion and administered prospectively, as past-due amounts are the vested of the recipient); *People ex rel. Winger v. Young*, 78 Ill. App. 3d 512, 513, 397 N.E.2d 253, 254 (1979) (duty to make child support payments is independent of duty to permit visitation, proper remedy for violation of visitation rights is petition for rule to show cause why the noncomplying party should not be found in contempt of court). The trial judge could have also reasonably concluded from this record that discretionary interest prior to 2000 was unwarranted. The trial judge's statements that there was "a money-for-child type of dispute," which "happens all the time, unfortunately," and has "been going on since the beginning of divorce cases" are indications that the judge did not believe Mark acted contumaciously. Accordingly, we do not find that the denial of interest prior to 2000 was an abuse of discretion.

For these reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and J. GORDON, J., concur.